UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff,**<br><br>V.<br><br>AARON LEE RAGLIN,<br>MARKISHA L. HADDIX,<br><br>    **Defendants.** | CRIMINAL NO. 5:15-CR-22-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on motions to suppress evidence filed by defendants Aaron Lee Raglin (DE 59, 62) and Markisha L. Haddix (DE 66, 67). The primary issue in this case is whether the search warrant that authorized the search of these defendants' residence was defective because it failed to particularly describe the things that the officers were authorized to seize. Because the warrant explicitly refers to a supporting affidavit that sufficiently describes the kinds of items to be seized, the motions to suppress will be denied.

    **I. Background**

In his application for the warrant at issue (DE 59-2, Warrant and Affidavit), Kevin Duane, a detective with the Lexington, Kentucky Division of Police, explained how detectives came to arrive at the residence of Raglin and Haddix on the day of the search.

He explained that, as part of an ongoing investigation of drug trafficking, detectives with the division's intelligence and narcotics units had been conducting surveillance of co-defendants Arnav Wheat, Ricardo Edmonds, and Michael C. Dawson. On February 5, 2015, that surveillance took them to the Fayette Mall parking lot. There they observed Wheat

park next to a black Cadillac and get out of his car with a child. He entered the Cadillac where he stayed 3 or 4 minutes. Wheat then got back into his own car and drove to another area of the parking lot where he parked, got out of his car with a white bag that "appeared to be in the shape of a box." (DE 59-2, Warrant and Affidavit.) He then entered a tan car. After several minutes, he exited the tan car carrying the same white bag, which now "appeared to contain currency." (DE 59-2, Warrant and Affidavit.) Wheat then drove his car to again meet with the black Cadillac. He entered the Cadillac's front seat, stayed several minutes, and then took the child from the Cadillac and pulled away.

Detectives then conducted a traffic stop on the tan car, which was being driven by codefendant Dawson, as it traveled on Interstate I-75. The officers searched the car and found 900-1000 Lortab pills.

Meanwhile, Detective Duane and another detective, identified as Detective King, followed the Cadillac to 3204 Mirror Lake Drive, the residence of Haddix and Raglin. The driver of the Cadillac parked the car and entered the residence where he stayed five to ten minutes and then drove away. Detective King followed the Cadillac and the driver began "to drive recklessly as [though] attempting to lose sight of Detective King." (DE 59-2, Warrant and Affidavit.)

Patrol officers stopped the Cadillac, which was being driven by codefendant Edmonds. The officers searched the car and found $3,000 in cash hidden inside it. Detective Duane talked with Edmonds who admitted meeting with Wheat at the mall parking lot and said he entered the Mirror Lake Drive residence to visit with his friend, Raglin.

Detectives "attempted to make contact with the residents" at the Mirror Lake Drive home. (DE 59-2, Warrant and Affidavit.) While there, a neighbor informed a detective,

2

identified as Detective Curtsinger, that a purse had been thrown on the roof of the Mirror Lake residence in the last couple of hours. Detective Curtsinger saw the purse and noticed that it did not appear to have been weathered or worn.

Defendant Haddix then arrived at the scene. She informed the detectives that she and Raglin resided at the house. She stated that the purse belonged to her but that she did not put it on the roof. Haddix verbally consented to the detectives retrieving and searching the purse. The detectives did so and found that the purse contained a large amount of cash, which was later determined to be $38,000. Haddix informed the detectives that there were also firearms inside the house. Raglin exited the home at this point and was detained.

Detective Duane then applied for a warrant. In the supporting affidavit, he explained these events that led the detectives to the Raglin/Haddix residence and he stated that he had probable cause to believe that a search of the property and Raglin would "reveal evidence related to the illegal use/sell/transfer of illegal narcotics." (DE 59-2, Warrant and Affidavit.) Fayette County District Judge Megan Thornton issued the warrant. The detectives searched the residence and, according to the United States' motion, found a small amount of cocaine, $4,815 in cash, several loaded pistols (one of which was confirmed to be stolen), ammunition, a hydraulic metal press, multiple large baggies in the trash, two sets of digital scales with cocaine residue, several cell phones, and paperwork connecting Raglin to the residence.

Raglin and Haddix seek to suppress all of this evidence.

**II. Analysis**

Raglin and Haddix argue that the warrant in this case was constitutionally deficient because it did not state with particularity the things that the detectives were authorized to seize from the house. The warrant clause of the Fourth Amendment requires that a search

3

warrant "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Here, the section of the warrant form that should identify the personal property to be seized from the residence was left blank. This would be a problem if the warrant were the only document that the Court could consider. That was the situation in *Groh v. Ramirez*, 540 U.S. 551 (2004). In that case, the warrant failed to identify any of the items that the officers were authorized to seize. Instead, in the space on the form requiring a description of the items to be seized, the officer inadvertently repeated the description of the dwelling. In contrast, the application for the warrant contained a detailed list of the items to be seized. The warrant did not, however, incorporate the application by reference.

The Supreme Court held that the warrant in that case was "plainly invalid." *Id*. at 557. This was because, "the warrant did not describe the items to be seized *at all*. In this respect the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." *Id*. at 558.

The Supreme Court recognized that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*. at 557-58. In *Groh*, however, the warrant did not incorporate any other document by reference. Nor did the supporting affidavit or application accompany the warrant. The Court determined that, because the officer who conducted the search "did not have in his possession a warrant particularly describing the things he intended to seize proceeding with the search was clearly unreasonable under the Fourth Amendment." *Id*. at 563.

4

Furthermore, the officer was not entitled to qualified immunity in that civil action because "the particularity requirement is set forth in the text of the Constitution." *Id*. Thus, "no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Id*.

After *Groh*, however, the Sixth Circuit issued an *en banc* decision which held that the particularity requirement was satisfied "even though the warrant itself did not describe with particularity the items to be seized."*Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 439 (6th Cir. 2006). This was because the warrant "expressly incorporated an affidavit that did describe them." *Id*. In that case, in the location on the warrant form for describing the things to be seized, the form simply stated "See Attached Affidavit." The affidavit identified machine guns as the items to be seized.

Here, like in *Baranski*, the warrant refers to the affidavit attached to it and explicitly provides that the affidavit is "made a part hereof as if fully set out herein." (DE 59-2, Warrant and Affidavit.) Accordingly, pursuant to *Baranski*, the Court may look to the affidavit to determine if the warrant sufficiently described the property to be seized.

Like the warrant at issue in this case, the affidavit at issue here also contains a section to describe the personal property to be seized. But like the warrant, that section of the affidavit is left blank. The Sixth Circuit faced a similar situation in *Sanders v. Parrish*, 141 F. App'x 412 (6th Cir. 2005). In that case, like in *Groh*, the section of the warrant form for identifying the items to be seized inadvertently contained a description of the premises to be searched. The affidavit filed in support of the warrant had the same problem.

But the Sixth Circuit determined that the particularity requirement was nonetheless satisfied because the supporting affidavit, which the warrant explicitly

5

incorporated, referenced another affidavit, in which the affiant stated that he had seen marijuana growing in the home that was searched. The court determined that this statement "remedies the deficient description of the items to be seized in the search warrant, as it makes it clear that marijuana plants were the items to be seized." *Id*. at 417. The officers did, in fact, seize marijuana from the home and several firearms that were in plain view.

In this case too, Detective Duane's affidavit makes clear that the detectives were authorized to seize evidence related to illegal drug trafficking activity. The affidavit explains that detectives in the Division of Police's intelligence and narcotics units were led to the residence of Raglin and Haddix as part of "an ongoing investigation involving illegal narcotics trafficking between" co-defendants Wheat, Edmonds and Dawson. (DE 59-2, Affidavit.)

The affidavit then described a suspected drug transaction that the detectives witnessed. The affidavit explained that the detectives found Lortab pills in one of the cars involved in the transaction and thousands of dollars in the other. The affidavit explained that the detectives had already found tens of thousands of dollars in a purse thrown that day on top of the Raglin/Haddix residence and that Raglin had prior charges for trafficking cocaine and being a felon in possession of a handgun. Detective Duane specifically stated that he had probable cause to believe that a search of the Raglin/Haddix residence would "reveal evidence related to the illegal use/sell/transfer of illegal narcotics." (DE 59-2, Affidavit.)

This makes clear that the items to be seized at the Raglin/Haddix residence consisted of evidence relating to the trafficking of illegal drugs. The problem with general warrants that fail to describe with particularity the things to be searched for and seized is

6

that they "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985)). "A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cir.2008) (citation omitted). "The particularity requirement eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *Id.* (citation and quotation omitted).

      Here, the warrant and supporting affidavit made clear that the detectives were authorized to search for and seize items relating to the specific offense of illegal drug trafficking. This was sufficient information to ensure that the officers could distinguish between contraband, which was subject to seizure, and legally possessed property, which was not. Neither of the defendants has argued that any item seized from the residence exceeded the scope of items related to illegal drug trafficking. As for the firearms, the Sixth Circuit "has held many times that guns are 'tools of the trade' in drug transactions." *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001). The same is true for cell phones and large sums of cash. *See United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (recognizing that cell phones and large sums of U.S. currency are "items commonly used to conduct drug trafficking activity"); *United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012) (stating

7

that possession of multiple cell phones is a "telltale sign of drug dealing" and recognizing that it is "common practice" for drug dealers to use multiple cell phones).[1]

Detective Duane testified at the hearing that he did not present the affidavit to Haddix or Raglin and that he did not have the affidavit with him at the time of the search. In *Baranski*, however, the Sixth Circuit determined that, "[w]hile the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search, it does not make a warrant-supported search a warrantless one." *Baranski*, 452 F.3d at 443. Likewise, there is no requirement that "affidavits must accompany all searches." *Id.* at 444. Here, there has been no argument that the search was conducted in an unreasonable manner. The Court cannot find that the search was unreasonable solely because the affidavit was not presented to Raglin or Haddix and was not at the scene of the search.

Even if the warrant were invalid, suppression of the evidence would not be required under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court evaluated the "costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate" and determined that such evidence should be admissible. *Id.* at 913.

The good-faith exception has limits. It does not apply:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached

---

[1] Detective Duane testified that the detectives only seized the cell phones on the date of the search. They did not examine the contents of the phones until after they obtained a separate warrant specifically authorizing that search.

> fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Higgins*, 557 F.3d 381, 391 (6th Cir.2009) (quoting *United States v. Rice*, 478 F.3d 704, 711 (6th Cir.2007)).

None of these limitations apply here. There is no allegation that Detective Duane included false information in the affidavit. There is no allegation that the state court district judge acted as a partisan rubber stamp. The affidavit is detailed and, as discussed in more detail below, establishes probable cause. Further, as discussed above, there is no clearly established law rendering the warrant invalid. Thus, the warrant was not facially deficient and the detectives' reliance on it was objectively reasonable.

In their motions to suppress, Haddix and Raglin made some additional arguments that they did not pursue at the suppression hearing. They argued that the warrant was not supported by probable cause. Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (quoting *United States v. Bennett*, 905 F.2d 931, 944 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (quoting *Illinois v. Gates*, 462 U.S. 213, 238)). In determining whether probable cause exists, the court looks to the objective facts known to the officers at the time of the search. *Smith*, 136 F.3d at 1075.

To the extent that the defendants still pursue the argument that the warrant was not supported by probable cause, that argument fails. In the supporting affidavit, Detective Duane, who has 14 hears of law enforcement experience, explained that on the date of the affidavit, he observed a suspicious transaction between Wheat, Edmonds, and Dawson; detectives later discovered Lortab pills and a large amount of cash in the cars involved in that transaction; one of the cars led the detectives to the Raglin/Haddix residence where the police discovered $38,000 in a purse thrown on the roof; and Raglin had a prior history of drug trafficking. Given these facts, there was certainly a fair probability that evidence of illegal drug trafficking would be found in the Raglin/Haddix residence.

The defendants also argued in their motions to suppress – but not at the suppression hearing – that certain statements they made to the detectives during the search should be suppressed because the defendants were not given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). To the extent that the defendants continue to pursue this argument, it also fails. The only evidence presented at the suppression hearing made clear that both defendants were given *Miranda* warnings.

### III. Additional motions

Defendant Raglin moves for an order requiring the government to produce the results of the examination of co-defendant Edmonds' phone (DE 85). The government responds that it was unable to download data from Edmonds' phone in a readable format and, thus, will not be presenting the data as evidence at trial. Accordingly, this motion will be denied. The government agrees to provide defense counsel a copy of the examination report and a record of phone tolls for Edmonds' cell phone.

Defendant Raglin also moves for an order requiring the government to produce text messages between co-defendants Dawson and Wheat for the week leading up to Raglin's

arrest (DE 86). The government indicates that it has retrieved text messages only from Dawson's phone with number ending 0307. The government states that it will provide a copy of all text messages that were sent or received from that phone between January 20, 2015 and February 6, 2015, which was the day after Raglin's arrest. These messages would include any texts between Dawson and Wheat for the week leading up to Raglin's arrest. Accordingly, this motion will also be denied, the government having agreed to produce the requested data.

### IV. Conclusion

For all these reasons, the motions to suppress (DE 59, 62, 66, 67, 85, 86) by defendants Raglin and Haddix are DENIED.

Dated September 4, 2015.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

11