UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:15-CR-22-KKC-REW |
| | ) | No. 5:18-CV-75-KKC-REW |
| v. | ) | |
| | ) | |
| AARON LEE RAGLIN, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Aaron Lee Raglin, is a federal inmate. DE #223 (Motion), at 1. On February 5, 2018,[1] Raglin filed a *pro se*[2] motion (along with a lengthy memorandum) under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition. DE #237 (Response). Raglin replied. DE #238 (Reply). On the United States's motion, the Court found that, as to communications necessary to litigate the claims of ineffective assistance, Raglin waived attorney-client privilege. DE #233 (Order). Further, the Court permitted limited record expansion. *See* DE #235-1 (Letters). The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #223) and issue **NO** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Raglin affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on February 5, 2018. DE #223, at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

## I.      BACKGROUND INFORMATION

On May 14, 2015, a grand jury returned a superseding indictment, charging Raglin (among several Co-Defendants) with (1) conspiring to distribute a mixture or substance containing cocaine (with 5 kilograms or more attributable to Raglin), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count 1),[3] and (2) being a felon in possession of certain firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 3). DE #34. Raglin pleaded guilty to a lesser-included offense of Count 1, pursuant to a binding plea agreement, on November 5, 2015. DE ##115 (Rearraignment Minute Entry); 145 (Plea Agreement); 146 (Sealed Supplement). Chief Judge Caldwell, per the Agreement, sentenced Raglin on December 10, 2015. DE #143 (Sentencing Minute Entry). Movant received a total prison sentence of 120 months followed by 8 years of supervised release. DE #148 (Judgment). Raglin appealed; the Sixth Circuit affirmed, and later denied a petition for rehearing. DE #182; *United States v. Raglin*, 663 F. App'x 409 (6th Cir. 2016). Raglin then sought a writ of certiorari; the Supreme Court denied the petition. DE #216; *Raglin v. United States*, 138 S. Ct. 354 (2017). On February 5, 2018, he timely submitted a § 2255 motion to vacate. DE #223. The Government responded. DE #237. Raglin replied. DE #238. Raglin identifies many of the central cases and ably argues his main contention. The well-briefed motion stands ripe for review. The Court, after evaluation, rejects all of Movant's claims and recommends dismissal. No basis exists for a Certificate of Appealability. Raglin knowingly entered and benefitted from a very favorable binding plea agreement. That

---

[3] The Court is mindful that throughout the § 2255 matter, Raglin disputes much of this procedural framing. The Court, at this point, simply provides a summary of the Superseding Indictment's facial allegations and delves into Movant's specific theories later.

agreement resolved a charge, at a lesser-included offense level, under a valid Superseding Indictment. The plea was sound, well counselled, and of significant advantage to Raglin. After losing a reserved suppression issue on a conditional appeal, he complains now, quite disingenuously, about the pro-defense nature of the charge structure within the Indictment. The arguments all fail.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a

movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.    ANALYSIS

In the § 2255 motion, Raglin requests relief, essentially, based on one overarching argument: that Count 1 of the Superseding Indictment invalidly charged variant amounts of cocaine "involved in the conspiracy" to different conspiring Co-Defendants. The overall gist of Raglin's motion is that this charging method is legally fatal to the Count and infects his case, at root, with illegitimacy.

Movant comprehensively (re)packages the claim (with slight variations) in the guise of (1) a challenge to an enhancement under 21 U.S.C. § 851; (2) an allegation of a constructive amendment of the Indictment; (3) a challenge to the knowing, voluntary, and intelligent nature of his guilty plea; (4) an allegation of ineffective assistance of trial counsel; (5) an allegation of ineffective assistance of appellate counsel; and (6) an alternative claim of actual innocence. *See* DE ##223 & 223-1. Raglin himself tells the Court that the "grounds in this motion are all interwined [sic.]" DE #223-1, at 2. The theories conclusively fail, on this record, under § 2255. In processing the many claims, the Court first addresses the substantive complaint underlying Raglin's arguments. The Court then applies that understanding to each of Movant's particular contentions.[4]

---

[4]    Raglin functionally avoids operation of the plea agreement's collateral attack waiver, DE #145, at ¶ 9, which the United States raised. *See* DE #237, at 1-2. A defendant may validly waive the right to collaterally attack a conviction. *See Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001); *Watson*, 165 F.3d at 489. "To be a valid waiver the defendant must enter into the waiver agreement knowingly, intelligently, and voluntarily." *Davila*, 258 F.3d at 451; *Watson*, 165 F.3d at 489. Courts do not,

A.    *Can an indictment validly charge co-defendants in a single conspiracy count with different controlled substance amounts?*

Raglin clearly expresses his overarching argument as follows:

As the indictment (count 1) did not use statutory language to charge a conspiracy to distribute 5 kilograms or more of cocaine, and because every other defendant charged in count 1, namely 'Edmonds, Wheat and Dawson,' were prosecuted for the offense of conspiracy to distribute 500 grams or more of cocaine, count 1 could not have charged 3 other defendants with the offense of, 'Conspiracy to distribute 500 grams or more of cocaine' while simultaneously charging another defendant, the petitioner, with 'Conspiracy to distribute 5 kilograms or more of cocaine,' all of whom are charged in the same 'overarching conspiracy.'

---

however, enforce waivers in "cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[.]" *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Because Raglin argues that his plea is invalid (based on the same substantive argument underlying all his claims) and because his motion includes a related IAC count, the Court does not enforce the collateral attack waiver here (but Raglin also, ultimately, earns no substantive relief).

However, the Court also considers the procedural default doctrine. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The Court may raise this doctrine *sua sponte*. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

Raglin raised only a suppression issue on appeal, *see* DE #182, and therefore defaulted all non-ineffective-assistance arguments. He did not address either *Regalado* prong, and the Court sees no obvious reason to conclude that either is satisfied in these circumstances. [Further, the Court rejects Raglin's innocence argument later in this Recommendation.] Accordingly, the Court holds that Raglin defaulted all non-ineffective-assistance arguments and recommends dismissal of those independently on this basis. However, because the claims are all fundamentally intertwined concerning the same underlying substantive issue, and because Raglin included related IAC and innocence arguments, the Court primarily relies on the following merits analysis as the dismissal basis.

5

DE #223, at 6-7 (all as in original); *see also, e.g.*, DE #223-1, at 5 (calling the quantity allegations "superfluous information"); *id.* at 9 ("[T]here existed no valid indictment[.]"); *id.* at 10 ("A single count of conspiracy . . . could not logically charge two different threshold amounts of cocaine, that was applicable to some, but not for all, and still be considered a single conspiracy[.]"); DE #238, at 11 ("The meat of the petitioners claim is that if count 1 did not charge all four defendants with conspiracy to distribute 5 kilograms, then it did not charge that offense at all." (all as in original)).

Count 1 charged that Raglin, Edmonds, Wheat, and Dawson "conspire[d] together and with others to knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine." DE #34, at 1. However, the Count then separated the defendants into two groups vis-à-vis involved cocaine quantity. The grand jury alleged that, as to Raglin, "the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 5 kilograms or more." *Id.* at 2. As to Edmonds, Wheat, and Dawson, the grand jury, using identical language, charged a lower 500 grams or more. *Id.* Raglin's central contention[5] is that it is legally impossible to charge co-defendants in a

---

[5] To the extent Raglin attempts a separate argument that the Indictment "includes not a single allegation that any of the charged defendants actually conspired to distribute either quantity referenced[,]" DE #223-1, at 9, the Court rejects this out of hand. Count 1 charged that 5+ kilos of coke were "attributable to" Raglin and "involved in the conspiracy" charged among him, Edmonds, Wheat, and Dawson. DE #34, at 1-2. Again, the conspiracy was the foursome's agreement "to knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine." *Id.* As to the quantity involved, either 5+ kilos or 500+ grams of a substance is indisputably "a detectable amount" of it.

6

single conspiracy count with different controlled substance amounts, infecting his conviction at root with illegality.[6]

The Court rejects this proposition—creative though it is—but not without first exploring various legal principles it implicates.

According to the Sixth Circuit, "[d]rug defendants may be . . . held accountable for an amount of contraband representing less than the complete scope of the conspiracy." *United States v. Alvarez*, 266 F.3d 587, 594 (6th Cir. 2001); *see also, e.g.*, *United States v. Young*, 847 F.3d 328, 366 n.3 (6th Cir. 2017) (noting that the Government "mention[ed] that it has adopted a defendant-specific approach to charging

---

[6]    There is awkwardness here because Raglin, the record reveals, ended up admitting his guilt to the same crime with which the grand jury charged his co-conspirators and to which they all pleaded guilty. *See* DE ##134, 137, and 140 (Plea Agreements). Ultimately, Raglin did not admit, the United States did not prove, and a petit jury did not find that 5+ kilos were, in fact, involved in the conspiracy and attributable to Raglin. Nevertheless, to ensure fair processing, and based on Raglin's contentions as to misperception or misinformation about the charge structure, the Court assesses the argument on Movant's terms.

That said, as to Raglin's many claims, the Court does note that Raglin's "guilty plea . . . precludes [him] from raising independent claims relating to the deprivation of constitutional rights which occurred prior to the entry of the guilty plea." *Burrows v. Engle*, 545 F.2d 552, 553 (6th Cir. 1976) (per curiam). Additionally, "allegations of technical defects in the indictment fail to state a claim for federal habeas corpus relief." *Id.*; *see also Wright v. Hooks*, No. 17-4069, 2018 WL 1773120, at *1 (6th Cir. Mar. 8, 2018) (same). Simply put, a "valid guilty plea waives all non-jurisdictional defects in the defendant's indictment." *United States v. Ball*, 12 F.3d 214, No. 93-3743, 1993 WL 524240, at *1 (6th Cir. Dec. 15, 1993) (table). Thus, Raglin's "challenges to [the] indictment are precluded by his guilty plea, which acts as a waiver of all nonjurisdictional defects in the indictment." *United States v. Christian*, 184 F. App'x 319, 321 (4th Cir. 2006) (per curiam); *see also United States v. Quesada-Lerma*, 197 F. App'x 308, 308 (5th Cir. 2006) (per curiam) ("Quesada's guilty plea renders his defective indictment claim waived because '[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant,' *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir. 2000), and an allegedly defective indictment does not deprive a district court of jurisdiction. *United States v. Cotton,* 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002)."). Again, though, the Court proceeds to consider the merits of Movant's arguments.

future drug conspiracies" without suggesting any problem that practice would engender).

As the Sixth Circuit described in an analogous context:

> It has been clear since *Braverman v. United States*, 317 U.S. 49, 54, 63 S. Ct. 99, 87 L. Ed. 23 (1942), that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime. *See also United States v. Solimine*, 536 F.2d 703, 711 n.31 (6th Cir. 1976). A single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous. *See, e.g.*, *United States v. Clark*, 67 F.3d 1154, 1160 (5th Cir. 1995).

*United States v. Dale*, 178 F.3d 429, 431 (6th Cir. 1999). *Solimine* helpfully clarified that "a single conspiracy may have as its object a variety of different crimes." 536 F.2d at 711, *judgment vacated on other grounds by* 97 S. Ct. 517 (1976). "The unlawful agreement itself is the essence of the conspiracy." *Id.* (holding that one co-defendant "was properly convicted for *his participation* in the conspiracy" (emphasis added)).

That is, essentially, what the grand jury charged here. It found probable cause to believe that Raglin, Edmonds, Wheat, and Dawson had committed one offense (conspiracy "to knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine") and that this single conspiracy had two different crimes as its object—namely, that Raglin violated § 841(b)(1)(A)(ii), and the three co-defendants violated § 841(b)(1)(B)(ii)(II)—one a lesser-included offense of the other. *See also infra* Section C. Again, just last year, the Circuit acknowledged (without criticizing) the United States's shift to "a defendant-specific approach to charging . . . drug conspiracies." *Young*, 847 F.3d at 366 n.3. Other courts around the country have sentenced defendants according to such a model without perceiving charging illegitimacy. *See, e.g.*, *United States v. Sholar*, 252 F. Supp. 3d 711, 713 (E.D. Wis. 2017) (explaining the court's reasoning after imposing a sentence when "Defendant

8

admitted that the amount  attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was more than 5 but less than 15 kilograms of cocaine").[7]

Indeed, the Sixth Circuit has affirmed when a trial jury convicted 4 co-defendants of a single cocaine conspiracy count, but found 3 liable for 5+ kilograms and 1 liable only for 500+ grams. *United States v. Solorio*, 337 F.3d 580, 587, 590-91, 603 (6th Cir. 2003); *see also, e.g.*, *United States v. Vazquez*, 49 F. App'x 550, 552-53 (6th Cir. 2002) (affirming when the "the Indictment charged Vazquez and his co-defendants with a cocaine conspiracy that involved at least twelve kilograms of cocaine," but when "Vazquez was not personally charged with a specific quantity"). Surely, if such a petit

---

[7]    Raglin makes much of and repeatedly invokes *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Alleyne*, which held "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury," *id.* at 2155, relates to the method of proving / finding the elements of an offense, not the legal validity of a charge. Additionally, *Alleyne* is simply inapplicable in the guilty plea context (where Raglin finds himself). *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013) ("Because *Alleyne* did not involve the effect of a defendant's admission of the facts necessary for an aggravated crime, it leaves undisturbed our cases deeming such admissions fatal to *Apprendi* claims.").

Additionally, *Alleyne* (if anything) only hurts Raglin's case. To "obtain a conviction for conspiracy under 21 U.S.C. § 846, the government must prove: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009). "Under § 846, defendants are subject to the same penalties as a person whose conduct falls within § 841. This subjects a defendant to the mandatory minimum sentences under §§ 841(b)(1)(A) and (B) upon a finding that the violation involved certain specified quantities of drugs." *United States v. Watson*, 620 F. App'x 493, 507 (6th Cir. 2015) (internal quotation marks, alterations, and citation removed). While "drug quantity is an element of the offense in § 841," thus, effectively, creating different offenses out of §§ 841(b)(1)(A) and (B), "*Alleyne* did not rewrite § 841(b) to add a new *mens rea* requirement. [Instead], § 841(b) still allows for strict liability as to the type and quantity of the drugs involved in a § 841(a) offense." *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014); *see also United States v. Blackwell*, 636 F. App'x 668, 673 (6th Cir. 2016) ("[P]roof of drug quantity is not an element that must be proved to sustain a conviction under 21 U.S.C. § 846."); *infra* n.11. Here, the Superseding Indictment alleged an aggravated crime, and Raglin pleaded guilty to each element of the lesser-included offense. *Alleyne* does not impact this.

jury conviction was valid (in *Solorio*), a grand jury charging in such a fashion is likewise valid (as to Raglin). Movant does not attempt to account for *Solorio*, cited in the United States's response.

That is not to say, however, that the general issue of "whether mandatory minimum sentences for § 846 drug conspiracy offenses are determined by conspiracy-wide or defendant-specific drug quantities" is fully settled, at least in this Circuit. *See Young*, 847 F.3d at 366-67 (describing the Circuit's perceived inconsistencies in addressing that question and declining to reconcile the cases);[8] *United States v. Robinson*, 547 F.3d 632, 639-40 (6th Cir. 2008) (approving statutory penalty range based on "the quantity of drugs involved in the conspiracy as a whole"); *United States v. Swiney*, 203 F.3d 397, 405-06 (6th Cir. 2000) ("adopt[ing] the reasoning" of courts of appeals that "applied the foreseeability analysis of the relevant conduct provision to the calculation of drug quantities for purposes of mandatory minimum sentences under 21 U.S.C. §§ 841(b)(1) and 846"); *Watson*, 620 F. App'x at 509-10 (distinguishing *Swiney* from *Robinson* as an opinion that "concerns sentencing under the Guidelines": "A different

---

[8] The *en banc* Court of Appeals recently expressed a desire to bring clarity to this area of law, but was unable to muster a majority. *See United States v. Gibson*, No. 15-6122, 2016 WL 6839156, at *1 (6th Cir. Nov. 21, 2016) ("While Gibson did not further admit that he reasonably foresaw that the conspiracy would involve that drug quantity, he did not need to. In *Robinson*, . . . we approved the district court's instructions to the jury 'that the relevant quantity determination is of the quantity involved in the . . . conspiracy to distribute cocaine.' *Robinson*, 547 F.3d at 638. Here, too, the relevant quantity determination is the quantity involved in the conspiracy, which Gibson admitted was fifty grams or more of methamphetamine. That admission triggers the mandatory-minimum sentence in our circuit, regardless of whether Gibson could reasonably foresee the drug quantity."), *vacated for reh'g en banc*, 854 F.3d 367 (6th Cir. 2017), *sentence aff'd by an equally divided court*, 874 F.3d 544 (6th Cir. 2017) (en banc).

standard of foreseeability applies in that context to the standard applicable to the drug quantity finding for § 846 purposes, which *Robinson* discusses.").[9]

The posture is slightly odd here because Raglin, a convicted felon with a § 851 prior, is asking the Court to hold that a conspiracy must invariably involve but one quantity of drugs, applicable universally to all co-conspirators (instead of seeking individualized consideration, as conspirators often do, surely the more defense-friendly approach). *See, e.g.*, DE #223-1, at 9 ("In short, the only quantity of cocaine relevant . . . was the quantity of cocaine involved in the conspiracy as whole."). The pertinent rule with which the Sixth Circuit has struggled, via the *Pruitt-Swiney-Robinson-Watson-Young* progression,[10] concerns verdicts, fact finding, and sentencing—not charge validity,

_____

[9] *See also, e.g.*, *United States v. Pruitt*, 156 F.3d 638, 644-45 (6th Cir. 1998) ("[N]o defendant may be held responsible for acts beyond the scope of his or her participation in the conspiracy. . . . We believe that this rule provides adequate protection against the possibility that a less culpable, 'small-time' seller of drugs will be caught up in the sweep of § 841(b) due to the acts of coconspirators."); *but see Young*, 847 F.3d at 366 (rejecting reliance on *Pruitt*'s statements in this context for the reasons stated in *Robinson*—namely, that they were "dicta"). To quote Judge Suhrheinrich's pithy summation, "the law appears inconsistent and contradictory regarding the necessity of defendant-specific determination of quantity." *United States v. Taylor*, Nos. 12-3806, 12-3807, 2013 WL 8700995, at *5-6 (6th Cir. Apr. 16, 2013).

[10] In a case consolidated with *Young*, the United States acknowledged that this question, in the Sixth Circuit, "remains unsettled." Rule 28(j) Notice of Supplemental Authorities, at 1, *United States v. Parnell*, No. 14-6451, ECF No. 97-1 (asserting that *Swiney* and *Robinson* constitute "inconsistent precedent"). The Government noted that it opposed granting a writ of certiorari in *Watson*, attaching the pertinent brief, due to a national change in DOJ charging policy. *Id.*, ECF No. 97-2, at 9 (noting the instruction to "all federal prosecutors in drug-conspiracy cases to charge, and request an instruction requiring the jury to find, an individualized drug quantity corresponding to the relevant statutory threshold for each defendant based on the amount of drugs that the defendant was personally involved with or could reasonably foresee in the course of conspiracy"). According to the Government, this change "should ensure that, going forward, drug-conspiracy defendants nationwide are sentenced to mandatory-minimum terms based on individualized drug quantities, regardless of the circuit in which the case is tried." *Id.* In that filing, the United States characterized the Sixth Circuit as the lone court of appeals with *Robinson*-like precedent. *Id.* at 10-11; *see also, e.g.*, *United States v. Ellis*, 868 F.3d 1155, 1170 (10th Cir. 2017) (holding the district court committed "error by convicting

Raglin's focus here. Quite on point and to the contrary, the Sixth Circuit has "emphasize[d]," in this context, "that [any such] constitutional error [would] not lie in the indictment itself. The government's failure to allege a drug quantity does not render a drug distribution indictment constitutionally infirm." *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002).

At bottom, Movant cites no law holding that an indictment is invalid if the grand jury charges different defendants with responsibility for different drug amounts within one conspiracy, and the Court has likewise found none. To the contrary, the Sixth Circuit has (1) affirmed a trial jury convicting co-defendants for variant cocaine quantities within a single conspiracy, *Solorio*, 377 F.3d at 587, 590-91, 603; (2) endorsed holding defendants "accountable for an amount of contraband representing less than the complete scope of the conspiracy," *Alvarez*, 266 F.3d at 594; (3) acknowledged (without criticizing) the Government's stated national intent to use "a defendant-specific approach to charging . . . drug conspiracies," *Young*, 847 F.3d at 366 n.3; (4) contemplated that a single conspiracy may include "an agreement to commit several crimes," for which each defendant can be punished for his own participation, *Dale*, 178 F.3d at 431; and (5)

---

and sentencing Ellis on 21 U.S.C. § 841(b)(1)(A) without the jury's having found his individually attributable amount of cocaine"); *United States v. Haines*, 803 F.3d 713, 741-42 (5th Cir. 2015) (vacating two defendants' sentences because the "jury did not make any findings about the drug quantities attributable to" them and instead made a "conspiracy-wide quantity" finding); *United States v. Pizarro*, 772 F.3d 284, 293 (1st Cir. 2014) (finding error when "the jury did not make a finding with respect to the quantity of drugs in the conspiracy foreseeable to him"); *United States v. Foster*, 507 F.3d 233, 250-51 (4th Cir. 2007) ("In other words, in order for the statutory maximums and mandatory minimums of § 841(b) to apply in a drug conspiracy case, the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant."). On the merits, the United States forecast that the Circuit would, if required to assess the question, reject *Watson*'s unpublished reasoning and side with *Swiney*'s prior treatment (which *Robinson*, a later decision, did not cite or grapple with). *See* No. 14-6451, ECF No. 97-2, at 11-13.

rejected the notion that any such error in this context would "lie in the indictment itself," *Stewart*, 306 F.3d at 310.

The grand jury and the United States, in its considerable prosecutorial discretion, choosing to take a more defendant-friendly approach in charging decisions, alleging quantity defendant-by-defendant instead of as one overarching conspiracy amount (even if it could do the inverse), hardly results in charge invalidity, in the Court's assessment.[11] Even if "*Apprendi* . . . does not *require* defendant-specific findings of drug type and quantity in drug-conspiracy cases," *United States v. Knights*, 342 F.3d 697, 710 (7th Cir. 2003) (emphasis added) (as the Sixth Circuit seems to maintain even post-*Alleyne*, *see,*

---

[11]     Even applying cases like *Robinson* on their own terms would end in a result adverse to Raglin. For example, while *Robinson* endorsed a conspiracy-wide quantity finding (for which Raglin argues, DE #223-1, at 9), it reminded courts and litigants that "a conspirator is liable for the substantive offenses of his co-conspirators only if those offenses are, among other things, reasonably foreseeable to him." 547 F.3d at 638-39. Sections 841(b)(1)(A) & (B), in effect, at least in the wake of *Alleyne*, create separate offenses. *Dado*, 759 F.3d at 570 ("[D]rug quantity is an element of the offense in § 841, since its effect is to increase the maximum penalty."); DE #238, at 12 (Raglin agreeing: "[T]he indictment completely segregates the defendants into sub-groups by referencing two separate drug quantities, that in all essence represents 2 different offenses." (all as in original)); *id.* at 15 (stating that § 841(b) "encompasses 3 separate offenses").

    In *Robinson*, on one hand, the jury found "that Robinson had participated in a conspiracy that involved five or more kilograms of cocaine." 547 F.3d at 640. Here, on the other hand, the grand jury found that, under the umbrella of a single conspiracy involving some detectable amount of cocaine, 5+ kilos were reasonably foreseeable to Raglin, but only 500+ grams were reasonably foreseeable to Edmonds, Wheat, and Dawson. A hypothetical grand jury perhaps could have charged these 4 coconspirators with an overall conspiracy involving 5+ kilos, based on the probable cause finding as to Raglin and the *Robinson* rule, but taking the more defendant-specific approach hardly strikes the Court as illegitimate. *Cf. United States v. Nahmani*, 696 F. App'x 457, 469 (6th Cir. 2017) ("recogniz[ing] that an indictment may charge a generic conspiracy to possess with intent to distribute a controlled substance and need not identify the specific drug that was the object of the conspiracy"). A single conspiracy can, as discussed, involve multiple offenses. *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002). In such a scenario, of course, Raglin would still be facing *the same charge*. The Court fails to see how Raglin, the conspirator already charged at the highest involved drug level, has a meaningful beef, when his complaint boils down to an argument that the grand jury simply should have upcharged his co-defendants, leaving his own charge unchanged.

*e.g.*, *United States v. Flowers*, 712 F. App'x 492, 501, 506 (6th Cir. 2017) (citing *Alleyne* and still applying an overall-conspiracy quantity)), that certainly does not, perforce, mean applicable law *bars* such findings. *See, e.g.*, *United States v. Acosta-Colon*, 741 F.3d 179, 192 (1st Cir. 2013) ("Even a quick look at the record reveals that the *jury* made *individualized* drug findings for each defendant beyond a reasonable doubt: following the judge's charge, the jury checked off lines indicating, for example, that Acosta had conspired to possess and distribute 1 kilogram or more of heroin, 5 kilograms or more of cocaine, 50 grams or more of crack, and less than 100 kilograms of marijuana." (emphases in original)). A petit jury finding (and grand jury allegation) can be *permitted* without being *mandatory* (or, on the other hand, *barred*). *See id.* at 186 (affirming when "the jury filled out defendant-specific verdict forms . . . picking drug-weight ranges for the drugs each defendant conspired to possess and distribute"); *Solorio*, 377 F.3d at 587, 590-91, 603. A grand jury surely *can* charge individualized drug quantities within a single conspiracy, even if (at least in this Circuit) it does not *have* to. For all these reasons, the Court concludes that the grand jury validly charged Raglin in Count 1.

The Superseding Indictment structure reflected a prosecution cautious over the proper and just manner of charging an umbrella conspiracy. The basic crime, one committed by all conspirators, was the agreement to distribute cocaine. To invoke the proper aggravating range (and to obey *Alleyne*), the grand jury charged the conspiracy violation "involving" the quantity it fairly attributed to each distinct participant. The legal limits and proper definition of what a conspiracy involves and the sentencing effect on individual actors is debatable, even within the Sixth Circuit itself. By charging in a defendant-specific way, the Superseding Indictment took the most conservative, most

14

lenient approach. *Robinson* may allow the one-quantity paradigm, but other Circuits would not, and the United States signals a uniform strategy in line with the mass of Circuits. The charge against Raglin—phrasing the aggravator as "the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him," DE #34, at Count 1—was the least aggressive and soundest way to cast the highest potential aggravating quantity. Thus, a 5+ kilogram conspiracy charged particularly as to an individual would, as to that individual, always also prove a conspiracy as a whole involving 5+ kilograms. If the other Circuits are correct, such a structure protects against any later constitutional or other defect. There is no infirmity in a charging approach that carefully protects against improperly raising the penalty maxima and / or minima as to the full roster of conspirator participants. Raglin, charged at the high end, has no real complaint.

Per this discussion, the Court recommends that the District Court hold that Count 1 of the Superseding Indictment against Raglin was not defective for alleging different drug quantities against different co-defendants under the umbrella of a single conspiracy. Judge Caldwell should reject Raglin's effort to combine *Robinson*, and the Government's post-*Alleyne* charging policy designed to avoid the result that *Robinson* itself enables, to forge a sword with which to attack the Indictment.

### B.    *21 U.S.C. § 851 Enhancement*

Turning to Raglin's specific claims, Movant first charges that the "§ 851 enhancement[] was used to enhance the sentence for an offense (the instant offense) for which the Petitiioner [sic] was neither afforded prosecution by indictment, nor properly[] or knowingly waived indictment for the offense that was enhanced." DE #223, at 4

15

(syntax as in original); *see also* DE #223-1, at 7-12. Later, Raglin specifically alleges that "any application of the § 851 enhancement . . . was not in compliance with 21 U.S.C. § 851(a)(2)." DE #223, at 4. The United States responded. DE #237, at 4-5.

On July 2, 2015, the United States filed a notice pursuant to 21 U.S.C. § 851 "based on [Raglin's] prior felony drug conviction for Possession with Intent to Distribute Crack Cocaine, by final judgment of the U.S. District Court, Eastern District of Kentucky at Lexington, Case Number 08-CR-157-JMH." DE #80. The United States filed this § 851 notice "before entry of the guilty plea" on November 5, 2015, satisfying § 851(a)(1). Movant does not contest this.

Raglin's specific argument concerns only § 851(a)(2), which provides, "An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed." The Sixth Circuit has held that § 851(a)(2) "applies to the offense of conviction in this federal case, wherein [Defendant]'s sentence was enhanced, and not to the [underlying] conviction that was the basis for enhancing [Defendant]'s sentence in this case." *United States v. Leach*, 14 F. App'x 319, 324 (6th Cir. 2001) (citing *United States v. Gaitan-Acevedo*, 148 F.3d 577, 594 (6th Cir. 1998)).

Raglin's argument, thus, collapses and is based on an incorrect understanding of the case allegations. He "either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed" via Count 1 of the Superseding Indictment (which, as discussed above, was valid) and via pleading guilty to the lesser-included offense. *See infra* Section C. Raglin signed the plea agreement,

16

explicitly acknowledging and agreeing that he was "subject to an enhanced statutory punishment" pursuant to the filed § 851 notice. DE #145 (Plea Agreement), at ¶ 5. "Section 851(a)(2) is satisfied here," *Leach*, 14 F. App'x at 324, and Raglin's argument on this front has no merit. *See, e.g.*, *Cardenas v. United States*, Nos. 8:04-cr-82-T-24MSS, 8:08-cv-244-T-24MSS, 2008 WL 2445640 (M.D. Fla. June 16, 2008) (dismissing § 2255 motion based on argument that the Government failed to comply with § 851 vis-à-vis a guilty plea to a lesser-included offense of PWID 500+ grams of coke); *see also infra* Section C.

C.    *Constructive Amendment*

Second, Raglin alleges a constructive amendment of the indictment. DE ##223, at 5; 223-1, at 12-14. A "constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).

Any "Government[al] representation of the charge in [C]ount 1 as charging a 'conspiracy to distribute 5 kilograms or more of cocaine,'" as Raglin argues, DE #223, at 5, is obviously not a constructive amendment of the Indictment. Instead, that is reasonable shorthand for the crime Count 1 charged, as to Raglin. *See* DE #34, at 1-2. That charge was valid, as already discussed. Movant chose to plead guilty, so there were no jury instructions or presentation of evidence about which to complain.

Raglin also asserts that "the plea agreement [as well as other statements to this effect] constructively amended the [I]ndictment by stating that [C]ount 1 charged the

17

Pettitioner [sic] with the lesser included offense of 'conspiracy to distribute 500 grams or more of cocaine'." DE #223, at 5. This argument, again, is based on Raglin's faulty understanding of Count 1. It validly charged him with a 5-kilogram aggravated quantity, for which a 500-gram aggravated quantity is a lesser-included offense. *Solorio*, 337 F.3d at 590-91 (so holding); *see also, e.g.*, Fed. R. Crim. P. 31(c)(1); *United States v. Boles*, 666 F. App'x 805, 808 (11th Cir. 2016) ("A lesser-included offense is one where it is impossible to commit the greater without having first committed the lesser." (internal quotation marks removed)).

It would be impossible, per the cases, for 5+ kilograms of cocaine to be involved in the conspiracy and attributable to a defendant without the lesser quantity first being so involved and attributable. *Solorio*, 337 F.3d at 590-91; *United States v. Pritchett*, 749 F.3d 417, 433 (6th Cir. 2014) ("The jury convicted Johnson of the lesser-included offense of conspiracy to manufacture and distribute more than 5 grams of actual methamphetamine or 50 grams of methamphetamine mixture, rather than the charged 50 grams of actual methamphetamine or 500 grams of methamphetamine mixture."); *United States v. Beals*, 698 F.3d 248, 254-55 (6th Cir. 2012) (same principle); *United States v. Martinez*, 430 F.3d 317, 339-40 (6th Cir. 2005) (holding that "Harris was merely convicted of a lesser-included offense" when "the indictment alleged greater quantities than the jury found" and "that all the elements of the former [a § 841(b)(1)(A) charge] necessarily include those of the latter [a § 841(b)(1)(B) charge]"); *United States v. Newton*, 389 F.3d 631, 639 (6th Cir. 2004) ("[T]he conviction for the smaller amount is a lesser-included offense of the indicted offense."), *vacated on other (*Booker*) grounds by* 126 S. Ct. 280 (2005); *United States v. Perez-Mendoza*, 625 F. App'x 761, 763 n.1 (6th

18

Cir. 2015); *United States v. Begley*, 602 F. App'x 622, 624-25 (6th Cir. 2015) (describing "conspiracy to distribute 50 grams or more of methamphetamine" as a "lesser-included offense" of "conspiring to knowingly distribute 500 grams or more of methamphetamine"); *United States v. Milburn*, 298 F. App'x 455, 459-60 (6th Cir. 2008).

Moreover, the simple fact that Raglin pleaded guilty to a lesser-included offense of a charge in the Superseding Indictment does not mean that a constructive amendment occurred. *Solorio*, 337 F.3d at 591 ("The jury merely convicted Solorio of a lesser-included offense, and as a result, his claim[] of . . . constructive amendment [is] meritless."). Raglin's arguments on this front have no validity.

### D.    Guilty Plea Validity

Third, Movant seeks to invalidate his guilty plea, claiming it "was based on material misinformation provided to the petitioner by the AUSA, the District Court, and Petitioner[']s defense [a]ttorneys." DE #223, at 6-7 (unnecessary commas removed); *see also* DE #223-1, at 14-26. Because of this "misinformation," Raglin says, he "did not understand the nature of the offense for which [sic] he had been charged, nor the minimum and maximum penaltie[s] he faced, as those were misstated as well." DE #223, at 7; *see also* DE #238, at 9-11.[12]

To be valid, of course, a plea must be "entered knowingly, voluntarily, and intelligently by the defendant." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). The record easily establishes that Raglin entered his plea in a knowing, voluntary, and intelligent fashion. Judge Caldwell informed Raglin of the lesser-included offense to

---

[12] To the extent Raglin attempts a separate complaint concerning the "confusing manner in which the indictment is drafted," DE #223-1, at 14, the Indictment could not be clearer concerning its quantity allegation as to each Defendant. *See* DE #34, at 1-2. It plainly includes the charged conspiracy and the quantity involved, as to Raglin. This satisfies Rule 7.

which he was pleading (which the plea agreement, signed by Raglin, also described). DE #207 (Rearraignment Tr.), at 7. The Chief Judge confirmed that Raglin had read and understood the plea agreement. *Id.* at 9-10. Raglin, under oath, affirmed that no one threatened, forced, or coerced him into signing the agreement. *Id.* at 10. Judge Caldwell confirmed Raglin's knowledge of the possible penalties under the plea agreement. *Id.* at 13-14. She confirmed there were no outside promises, and that Raglin entered the agreement voluntarily. *Id.* at 18. At bottom, Judge Caldwell found that Raglin was "competent and capable of making an informed plea," that he "underst[ood] the nature of the charges and the consequences and conditions of his plea," and that he made his plea "voluntarily." *Id.* at 19-20; *see also* DE #145, at ¶ 16. Raglin admitted his guilt to the lesser-included offense quantity. DE #207, at 10, 15-16, 19.

Here, as described, the rearraignment colloquy and plea agreement fully establish that Raglin entered a knowing, voluntary, and intelligent plea. *United States v. Powell*, 798 F.3d 431, 434 (6th Cir. 2015). Raglin's argument to the contrary concerns the alleged "misinformation" concerning Count 1's charging model, which, as discussed, was valid. Raglin received, in the Court's assessment, no "misinformation" concerning Count 1 or the lesser-included offense to which he pleaded, at any of the involved litigation stages.[13] Raglin also does not establish that Judge Caldwell committed any connected Rule 11

---

[13] He also received no misinformation concerning the potential penalties. As to the original Count 1 charge, the undersigned accurately advised Raglin of all possible penalties. *See* DE ##28 (IA Minutes); 217 (IA Tr.), at 7-8; Audio File No. KYED-LEX__5-15-cr-22-KKC-REW-1_20150504_144855, at 4:45-6:18. The undersigned later confirmed that "nothing substantive really changed" in the Superseding Indictment as to Raglin. DE #210 (Arraignment Tr.), at 5-6. Raglin affirmed each time that he understood the charges and potential penalties. DE ##217, at 10; 210, at 7. As to the lesser-included offense, the plea agreement covered the possible penalties, DE #145, at ¶ 5, as well as the parties' binding penalty agreement, *id.* at ¶ 6. The prosecutor and the District Court covered these terms accurately in open court at rearraignment. DE #207, at 12-14. Raglin got the precise deal he negotiated.

violation. *See* DE #223-1, at 24-26. Therefore, the Court concludes, per this discussion, that Movant's plea was knowing, voluntary, and intelligent. Raglin establishes no basis for setting aside his valid plea.

     E.     *Ineffective Assistance of Trial Counsel*

Fourth, Raglin makes an ineffective assistance of trial counsel argument. When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice,

courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).[14]

Raglin specifically charges that his trial counsel ineffectively misinformed him "of the nature of the offense charged in [C]ount 1" and of the possible penalties (as well as ineffectively failed to object to others' (including the prosecutor's and the Court's) like statements). DE #223, at 8. Movant also charges that counsel ineffectively negotiated the binding plea agreement because, he claims, a 120-month imprisonment term "could not legally be imposed." *Id.*; *see also* DE ##223-1, at 27-32; 238, at 12-15.

All of these arguments suffer at root from the same (familiar) problem: they hinge on Raglin's incorrect belief that Count 1 invalidly stated a charge. For the reasons already discussed, Raglin does not establish that defense counsel misinformed him of the nature of the offense charged in Count 1 or of the possible penalties, or that counsel ineffectively failed to object to others' statements concerning these issues. *See* DE #235-1 (Letter from counsel accurately advising Raglin).[15] The Court, at Raglin's initial appearance and at rearraignment, ensured Movant's understanding of the full (and accurate) suite of charges and possible penalties (of which the plea agreement and Judge

---

[14] *Lafler* was a § 2254 case (as were some others this Recommendation cites), but the analysis also generally applies to § 2255 theories. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

[15] Counsel obviously did not "lack . . . a rudementary [sic] understanding of the basic elements of the offense that the petitioner was charged with." DE #238, at 15. It is Raglin, despite his "over 100" readings of the Indictment, *id.* at 13, with the fundamental misunderstanding.

Caldwell likewise accurately advised him, regarding the ultimate crime of conviction).[16] The information Raglin received from his counsel, the prosecutor, and the Court was accurate, contrary to his beliefs, stated only in the § 2255 briefing.[17]

Finally, 120 months (given Movant's prior federal conviction and the § 851 notice) was, in fact, the minimum punishment applicable to the offense to which Raglin pleaded. *See* 21 U.S.C. § 841(b)(1)(B). The Court sees no ineffectiveness in counsel negotiating a binding plea agreement to the lowest possible statutory penalty as to a lesser-included offense—one significantly less than Raglin could have faced under Count 1 as charged in the Indictment. [Again, Raglin's argument on this front is solely dependent on his misapprehension, only now on § 2255, of the legal landscape.] Counsel

---

[16] This, further, cures any possible misadvice by counsel. *See, e.g.*, *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. . . . The court's proper advisement of rights is thus deemed to 'foreclose' any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. . . . Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood."); *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); *cf. Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (rejecting ineffectiveness when a lawyer promised a defendant he would receive 144 months when the plea colloquy made clear "that the district judge, and no one else, would determine the final sentence").

[17] Only in reply, Raglin cites and makes much of *United States v. Mutchler*, 333 F. Supp. 2d 828 (S.D. Iowa 2004). *See* DE #238, at 13-14. That opinion (despite being nonbinding, from an out-of-Circuit district court) merely concerned striking surplusage, a topic Raglin does not raise. *See Mutchler*, 333 F. Supp. 2d at 834 (striking surplusage). More fundamentally as to Raglin's claims, though, *Mutchler* is also not persuasive; it was pre-*Alleyne* (indeed, even pre-*Booker*), milestone legal developments that now cast doubt on many of Judge Pratt's musings of that era. *See id.* at 830 (noting opinion issuance "in the current uncertain post-*Blakely v. Washington* sentencing environment"). *Mutchler* even received heated contemporaneous judicial criticism. *See United States v. Gotti*, No. S802CR743(RCC), 2004 WL 2389755, at *9 (S.D.N.Y. Oct. 26, 2004) (dissing *Mutchler*'s holdings as "highly dubious proposition[s]" in light of a (in retrospect, prescient) prediction of *Blakely*'s likely "application to the Sentencing Guidelines"); *United States v. Jamison*, No. 04-CR-133-S, 2004 WL 2385003, at *2 (W.D. Wis. Oct. 21, 2004) (contrasting Judge Pratt's viewpoint with that of the Seventh Circuit).

was not ineffective under any of Raglin's arguments.[18] *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

### F. Ineffective Assistance of Appellate Counsel (IAAC)

Fifth, Raglin mounts an ineffective assistance of appellate counsel argument. "Appellate counsel does not have an obligation to raise every possible claim that a client may have, and counsel's performance is presumed to be effective. Only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome. To succeed on a claim that appellate counsel performed ineffectively, a petitioner also must demonstrate a reasonable probability that, but for his counsel's unreasonable failure to raise an issue on appeal, he would have prevailed." *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (internal citations, quotation marks, and alterations removed). The familiar *Strickland* standard thus continues to apply. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017); *see also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) ("The familiar two-prong test set forth in *Strickland* . . . applies to claims of ineffective assistance of appellate counsel raised in a motion under section 2255.").

In this ground, Raglin simply re-alleges the arguments concerning the validity of his plea, the § 851 notice, and the purported constructive amendment. DE #223, at 13; *see also* DE #223-1, at 32-39. The Court rejects these IAAC claims for all the reasons

---

[18] To the extent Raglin claims that counsel's failure to object to a purported constructive amendment or the § 851 notice was ineffective, *see* DE #223-1, at 32, the Court rejects those arguments for the reasons stated for rejecting the corresponding substantive claims. Eschewing meritless objections is not ineffective.

previously stated for rejecting the identical substantive arguments. Not raising baseless appellate arguments does not transgress *Strickland*.[19]

### G. Actual Innocence

Sixth, Movant alternatively, and quite confusingly, argues "that he is actually innocent of the offense of [c]onspiracy to distribute cocaine." DE #223, at 13. He offhandedly mentions duplicity, that his "conduct does not fit that of which [sic] violates conspiracy law," and an argument that "a single person cannot conspire." *See id.*

The Court does not perceive a "credible" claim of actual innocence. *See Cleveland v. Bradshaw*, 693 F.3d 626, 632-33 (6th Cir. 2012). Presenting such a claim requires Raglin "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 633. The Court finds none of that in Raglin's submissions.[20] "[A]ctual innocence means factual

---

[19] Further, of course, Raglin had waived the right to appeal, with the sole exception of reserving "the right to appeal the district court's denial of his pretrial motion to suppress[.]" DE #145, at ¶¶ 2, 9. Counsel raised that issue on appeal.

[20] Additionally, and more fundamentally, "the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context[.]" *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) (citing *Herrera v. Collins*, 113 S. Ct. 853, 869 (1993)). "Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying . . . criminal proceeding." *Herrera*, 113 S. Ct. at 860. Thus, apart from other rejection bases, the Court, following the Supreme Court's commands, is simply "precluded from considering [Raglin]'s freestanding innocence claim." *Wright*, 247 F. App'x at 712; *see also, e.g.*, *Hastings v. Berghuis*, No. 16-2666, 2017 WL 5992232, at *2 (6th Cir. May 9, 2017) ("[T]his freestanding actual innocence claim is not cognizable in a non-capital habeas corpus proceeding."); *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014) ("As the district court properly held, Thomas's freestanding claim of actual innocence . . . is not cognizable on federal habeas review."); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Evers v. United States*, No. 13-2690, 2017 WL 1011499, at *5 (W.D. Tenn. Mar. 14, 2017) (applying these principles to a § 2255 motion); *Gibbs v. United States*, No. 1:12-cv-796, 2016 WL 3216264, at *5-6 (W.D. Mich. June 10, 2016) (same).

innocence, not mere legal insufficiency." *Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998) (internal quotation marks removed). Legal arguments are Raglin's focus.

Further and regardless, fatal to this claim are Raglin's own unequivocal admissions—namely, that on or about February 5, 2015, he "and co-defendants agreed to distribute cocaine in Fayette County." DE #145, at ¶ 4(a). The remainder of ¶ 4 details Raglin's (as well as Wheat's, Edmonds's, and Dawson's) damning conduct. Raglin solemnly affirmed, under oath, at rearraignment that he reviewed ¶ 4 with his counsel and that he admitted the conduct described in that comprehensive paragraph. DE #207, at 15-16. He ultimately admitted his guilt to conspiring "to distribute 500 grams or more of cocaine." *Id.* at 10, 15-16, 19. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Raglin does nothing to overcome these prior solemn declarations, under oath in open court. *See id.* He presents, for instance, no affidavit and no affirmative proof on this point whatsoever. Raglin's confessed conduct, as detailed in the plea agreement and confirmed on the record, directly refutes the predicate of this innocence argument.[21]

---

[21]    The Court is unsure precisely what Raglin means by his argument that "a single person cannot conspire." He admitted conspiring with his co-defendants. DE #145, at ¶ 4. Again, as discussed, drug amounts attributable to each defendant can vary, and, regardless, Movant pleaded guilty to the same amount with which the grand jury charged his co-defendants and to which they all pleaded guilty. [Again, if he tethers the claim to Indictment validity, he continues to lose for the same repeated reasons.]

As to Raglin's throwaway mention of duplicity, an "indictment is duplicitous if it joins in a single count two or more distinct and separate offenses." *United States v. Shumpert Hood*, 210 F.3d 660, 662-63 (6th Cir. 2000) (internal quotation marks removed). "The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *Id.* Here, Count 1 charged but one offense—§ 846 conspiracy—and clearly demarcated the cocaine amount allegedly attributable to each defendant. Raglin, obviously, ultimately admitted his guilt to a particular (and lesser) quantity. Again, a

H.       *Evidentiary Hearing*

Raglin generically requests "a hearing." DE #223-1, at 40. The Court must hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Raglin's claims do not warrant a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that Raglin's claims fail. There are no contested factual issues that justify a hearing. The record, which needs no further development, forecloses relief.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley*

---

single conspiracy can involve multiple offenses. *Campbell*, 279 F.3d at 398. "[A]n agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime." *United States v. Boyd*, 640 F.3d 657, 666-67 (6th Cir. 2011). There is no duplicity here.

Finally, to the extent Raglin's meanderings generically assert other alleged violations, *see* DE #223-1 at 6, 29, 39, the Court cannot meaningfully assess such factless, undeveloped claims, completely devoid of particulars.

*v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Movant has not made a "substantial showing" as to any claimed denial of rights; all his claims, for the reasons explained, conclusively fail. Reasonable jurists would not find the Court's determinations debatable. As thoroughly discussed, Raglin raises one central issue (in his phrasing, a "single misapprehension of law," DE #223-1, at 6): whether it is legally possible for a single conspiracy count to charge different co-conspirators with different drug quantities. Although this issue touches on, or relates to, questions of debate, *see, e.g.*, *Gibson*, 874 F.3d 544 (the *en banc* Circuit equally dividing) & discussion *supra*, Raglin's specific variant, concerning charge validity in this context, is beyond reasonable judicial disagreement, for all the reasons explained. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.    RECOMMENDATION

For the reasons discussed, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #223) and issue **NO** Certificate of Appealability.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the

statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 24th day of April, 2018.

Signed By:

Robert E. Wier

United States Magistrate Judge